<hr />

## MARTIN vs. BLACK'S EXECUTORS.

1. A proposition or offer made by letter which is not replied to within a reasonable time, cannot be considered as a contract.

2. A promise to pay the debt of another, if reduced to writing and founded on a sufficient legal consideration, is binding, whether the consideration be a benefit to the promisor or a prejudice to the promisee; but if the promise is not reduced to writing, it is void, unless founded on some new consideration beneficial to the promisor.

3. A verbal promise by defendant, to pay a debt against the estate of her deceased son, if the attorney who held the debt for collection would also act as her

attorney, in having the administrator of the estate removed and herself appointed administratrix *de bonis non*, is void within the statute of frauds, it being shown that the attorney charged her for his said services, and that she had paid him.

ERROR to the Circuit Court of Lowndes.

Tried before the Hon. EZEKIEL PICKENS.

This suit was instituted against Margaret Black, the testatrix of the defendants in error, on a note executed by William W. Black, who was her son; which note, it is alleged, after the death of said William W. Black, she promised to pay. The note is for $67 33, and is payable to the plaintiff, James Martin.

The promise upon which the defendant was sought to be charged, is thus stated: That she, the said defendant, " after the death of the said William W. Black, was appointed administratrix of his estate, and as such had possession of said estate to a large amount; and thereupon, in consideration of the premises, and that the said plaintiff, at the special instance and request of the said Margaret, would forbear and give time to her, the said Margaret, as such administratrix of said estate, for the payment of said sum of money, so due the said plaintiff, until she, the said Margaret, could dispose of the cotton crop made on the plantation during the year 1847, and which was cultivated by the said William W. Black in his lifetime, she, the said Margaret, undertook and promised said plaintiff to pay him said sum of money in the said note specified, when she, as such administratrix, disposed of said crop of cotton." The declaration then avers, that the said plaintiff did forbear suit on said note, and that the defendant had disposed of said crop of cotton; whereby she became liable, &c.

The declaration also contains the common counts, for money had and received, goods sold and delivered, services done and performed, &c.

Margaret Black died, pending the suit, and it was revived against her executors. A trial was had, which resulted in favor of the defendants; but the plaintiff took a bill of exceptions to the rulings of the Circuit Court on the trial, and brings the case, by writ of error, to this court.

From the bill of exceptions it appears, that the only prom-

ise in writing consisted of a letter, written by Mr. Chappell, under the authority of Mrs. Black, the defendant, to R. A. Colclough, Esq., the attorney of the plaintiff. 'This letter was dated at Columbia, S. C., October 28, 1847, and is as follows:

"DEAR SIR: On coming here this morning, I received a letter from Col. Gregg, Mrs. Black's legal adviser, desiring that I would take some agency in the settlement of her matters in Alabama, in reference to her son William's indebtedness. I have for some time abandoned the turmoil of legal proceedings; but, to oblige both my friend Gregg and Mrs. Black, I have consented to interfere in the settlement of the estate.

"I wish, if it be practicable, (and I see no reason to the contrary,) that the claims against Dr. William W. Black may be allowed to remain in abeyance for a short time. No one will suffer by it, and eventually all will be paid; and the delay for a few weeks, or a few months, cannot be a matter of importance to the claimants, especially when the ease and comfort of an aged, and at this time disconsolate mother, is taken into consideration; (for she has just learned, that her other son, Thomas, is very ill, and probably before this dead.)

"Mrs. Black authorizes me to say, that all the just claims against the doctor shall be paid; first, out of the present year's crop, and if any deficiency shall accrue, it shall be supplied out of the first funds she shall be able to command. At all events, the delay will not be long. As regards the claims you represent, she says, they shall be met, and she will, I suppose, so soon as she has recovered a little from her present depression, give Mr. Bradley the acknowledgment which you appended to your memorandum.

"With these assurances, and with the further assurance that, in a few weeks, she will send on some one fully authorized to arrange these matters, I hope you and your clients, and all other claimants, will be content. She wishes the crop gathered, and sold, and applied to William's debts, and for the balance she will provide. The property will not be removed; so all will be perfectly secured. I wish that you and all others representing claims will forbear to institute legal proceedings, which will only swell the amount of costs, and abstract from Mrs. Black's means. I shall be out myself

in a few weeks, when I will see you and all others whom I may meet, and, I hope, satisfy you on these matters; until which time, I hope and trust there will be a general forbearance, and that no steps will be taken to sell the property, or to incur costs unnecessarily. I have seen Mr. Bradley and the register of claims; and so soon as Mrs. B. is over her present depression, I suppose he will send you the acknowledgment. In the meantime, I remain yours, &c."

It was not shown, that Mr. Colclough or any one else ever replied to this letter. But it was proved, that letters of administration on the estate of said William W. Black were granted to one William E. Harris, on the first of October, 1847, and that said Harris was removed, and Mrs. Black was appointed administratrix *de bonis non*. It was also proved, that a conversation took place between Mrs. Black and said Colclough, about the first of December, 1847, relative to said claims and the said administration, in the course of which Mrs. Black proposed to employ Colclough as her attorney, to get the said Harris removed from said administration, and have herself appointed; that Colclough refused to be employed for that purpose, unless Mrs. Black would agree to settle and pay the claims then in his hands for collection, amongst which was the note on which this suit is founded; that Mrs. Black agreed to pay said claims, out of the proceeds of said cotton crop, which, however, she claimed as her own, as she also claimed the land and negroes in the possession of said Black at the time of his death.

The proof also showed, that said Colclough did act as Mrs. Black's attorney, in having Harris removed and herself appointed administratrix *de bonis non*, with the understanding that she should pay all the claims which he held against said Black's estate for collection; that no proceedings were instituted upon these claims against the said estate, and that Mrs. Black sold said crop of cotton about the first of May, 1848. It was also shown, that Colclough had brought suit against Mrs. Black, to recover for his services as an attorney, and had recovered a judgment which Mrs. Black afterwards paid; the amount of this judgment, however, is not shown by the bill of exceptions. It further appeared in evidence, that Colclough had an interview with Mrs. Black, in September, 1847,

in Columbia, South Carolina; and that she then claimed the land and negroes of which said William W. Black had possession at the time of his death, but proposed to Colclough that she would pay said claims, if he would take no proceedings against said estate, out of the proceeds of the cotton crop, which was raised in 1847, and which would probably be sold during the spring of 1848. To this proposition Colclough assented, and took no proceedings to enforce the collection of said claims.

On this evidence, the court instructed the jury, that if they believed it all, they should find a verdict for the defendants; to which charge the plaintiff excepted, and he now assigns it for error.

WATTS, JUDGE & JACKSON, for plaintiff in error:

1. The consideration for a promise may either be a benefit to the promisor or injury to the promisee. Story on Contracts, § 431; Allen v. Travis, 1 Stewart & Porter, 192; 4 Ala., 230.

2. There can, on principle, be no difference between the character of a promise to pay the debt of another and an original promise, so far as the consideration is concerned, provided the promise to pay the debt of another is founded on some new and distinct consideration. To take the case out of the statute of frauds, there must be some new and distinct consideration; in other words, it must be of the nature of an original contract, to take it out of the statute of frauds. How then can it be said in such a case, that the consideration must be some benefit to the promisor? In every original contract the consideration may be a benefit to the promisor or an injury to the promisee.

3. In the case at bar, we say, however, that there was a written contract promising to pay the debt of another, on sufficient consideration. It is not necessary that the consideration should be expressed in the written promise. Thompson v. Hall, 16 Ala., 204.

4. The promise made by Mrs. Black to pay, in consideration that no proceedings should be taken to subject the property in Alabama, which William W. Black died possessed of, and which he claimed as his own, and which she

likewise claimed as her own, is a promise beneficial to her; it is a promise by way of compromise. The failure to proceed against this property was a benefit to her (she claiming it as her own) in preventing costs of a sale under administration, and other expenses necessarily incident to a proceeding to subject it to the payment of his debts. This is something more than mere delay; it is a new contract founded upon a new consideration. Travis v. Allen, 1 S. & P., 192, and authorities therein cited.

5. The promise to Colclough to pay these debts in consideration of getting his services as attorney, is a promise beneficial to her, and upon sufficient consideration, and is not within the statute of frauds. It is a new contract, an original contract upon a new consideration. Courts will not undertake to measure the sufficiency of the consideration; i. e., will not undertake to ascertain whether it is a consideration fully equivalent. 8 Johns., 23; Story on Contracts, § 431.

6. It is now well settled, although at first the cases were contradictory, that, in cases of simple contract, if one person make a promise to another for the benefit of a third, although no consideration move from such third person, it is binding, and either the party to whom it is made, or for whose benefit it is made, may bring the action. Story on Contracts, 450, 451; Chitty on Con., 54; 17 Mass., 400; 3 Shepley, (15 Maine Rep.,) 285; 17 Mass., 575.

7. The forbearance need not be specified distinctly, nor need any specific length of time be named, provided it appear to be reasonable. See this case decided at last term of the court; see also, Chitty on Con., 37, and authorities there cited; Smith v. Algar, 1 B. & Ad., 603; Story on Contracts, § 435, and authorities there cited.

ELMORE & YANCEY and I. B. STONE, *contra:*

I. The parol promise to Colclough, made in South Carolina, is void under the statute of frauds as without consideration. Brown v. Barnes, 6 Ala., 694; 3 Metcalf, 396; Martin v. Black, decided January term, 1852.

II. Mrs. Black was not bound by the letter, because:

1. It is an absolute promise to pay the debt, without any condition or consideration stipulated for, asked or proposed.

The promise to pay and the request not to sue are distinct, neither in any manner dependent on or connected with the other. This promise is then without consideration and invalid, independent of the statute of frauds. Its being in writing makes no difference. Beall & Co. v. Ridgeway, 18 Ala., 117.

2. If construed as a proposition or even a promise to pay in consideration of forbearance, the proposition or promise was not accepted by the plaintiff or his attorney, or any one for him. The letter was not answered. The plaintiff not being bound to forbear, Mrs. Black was not bound by the promise. There was no mutuality of promise.

3. The promise, if in consideration of forbearance, was if the forbearance should be for a "short time," "a few weeks" or even "months," which is too vague. Story on Contracts, § 435, (and cases in note) 357. As to its being a proposition only and not accepted. Allen v. Roberts, 2 Bibb, 98; Steele v. Dart, 6 Ala., 798; Musgrove v. Hudson, 2 Stew., 464; Abeel v. Radcliffe, 13 John., 299; Adams v. McMillan, 7 Porter, 73; 1 Greenleaf on Evidence, § 268, 305; Roberts on Frauds, 105.

III. The plaintiff cannot recover on the last promise to Colclough, because:

1. There was no privity of contract between the plaintiff and Mrs. Black; he was not present, and furnished no part of the consideration, and was not bound to forbear; the promise was not to him, and Colclough had no authority from him to accept the terms and bind him. The authority of Colclough was that of an attorney at law only. Crow v. Rogers, 1 Strange, 592; Price v. Easton, 4 B. & Adol., 433; Osborne v. Rogers, 1 Saunders, 264; Sailly v. Cleveland et al., 10 Wendell, 156; Spencer v. Field, 10 Wendell, 87; 1 Chitty on Pleading, 1 to 7.

2. The promise was to Colclough, who furnished the consideration, and had an interest in the note and in its collection, and a lien on it for his fees. The legal interest in the promise was then in him, and he alone, if any one, could sue for its breach.

In the cases where it is held, either the parties for whose benefit the promise was made, or the person who furnished

the consideration may maintain the action, the decisions rest on the principle that both were parties or privies to the contract, both being present when the contract was made; or there was some circumstance to make them parties or privies, as a subsequent promise to the plaintiff. See authorities *supra*; also, Wilson v. Coupland, 5 B. & Alder., 228; Tipper v. Bickwell, 3 Bing. N. C., 710; Webb v. Roades, 3 Bing. N. C., 734; Disborne v. Denable, 1 Rolle's Ab., (pt. 5,) 31; Starkey v. Mylne, 1 Rolle's Ab., (pt. 13,) 32; Story on Con., § 450, 368–9; 4 Ala., 230. On the same principle, even courts of chancery will not enforce executory trusts in favor of volunteers who are neither parties or privies to the deed or agreement, on their application, even when there has been a valuable consideration for the trust. Davenport v. Bishop, 2 Y. & C., 451; 2 Keene, 81; 11 Simons, 584; 3 Merivale, 707; 3 Simons, 1; 2 Myl. & K., 495; 3 Merivale, 249; Story's Eq., § 793, 302.

3. And this case is not within the influence of the rule in Dutton v. Pool, because Colclough did not render his services as the agent of the plaintiff, but in his own behalf as an attorney, and sues for, recovers, and is paid for them.

4. The promise was, to pay out of the cotton made with property in possession of the intestate in his life time, and claimed by him, and on the testimony his. It was a promise then by her to pay out of the assets of the estate before she had anything to do with it; and the amount of assets is not shown.

5. It is not shown that the original debt was discharged, and Mrs. Black's promise is a collateral undertaking, which must be in writing.

DARGAN, C. J.—The plaintiff in error insists that he was entitled to a recovery on the written promise contained in the letter of Chappell to Colclough, and also on the verbal promise made by Mrs. Black to Colclough at Montgomery in December, 1847.

In reference to the written promise, the case differs widely from what it was when it was before this court at a previous term. Then the bill of exceptions merely showed that Mrs. Black promised in writing to pay the debt, in consideration

of forbearance to sue the estate of William W. Black, deceased; but now the written instrument itself is brought before us, which is the letter of Mr. Chappell, written to Mr. Colclough, under the authority of the defendants' testatrix. But this letter, in connection with the other proof, falls far short of showing a binding contract to pay the debt; for the rule unquestionably is, that a mere offer to do an act, or to enter into a contract, cannot, within itself, create a binding obligation on the party making it. (Before it can have the effect to create an obligation, it must be accepted or assented to by the party to whom it was made; and this acceptance or assent must be made known in a reasonable time to the party making such offer.) This proposition is so universally true, that it is needless to refer to authorities to sustain it. Many of them, however, will be found collected in Chitty on Contracts, 7th Am. Ed. by Parker, from page 6 to 16. The letter of Mr. Chappell was never answered, nor does it even appear that its terms were agreed to; if, then, it could be construed as containing terms sufficiently definite to create a contract, (which, I think, is very questionable,) still, it can be considered in no other light than a mere offer, to which no reply was given, and therefore not a contract.

The verbal promise made to Mr. Colclough in December, 1847, was founded on this consideration: Mrs. Black applied to Colclough to have Harris, who had been appointed administrator of William W. Black's estate, removed from office, and to have her appointed administratrix *de bonis non.* He refused to be employed, unless she would agree to pay all the claims against the estate which he held for collection, amongst which was the note sued on. To this Mrs. Black agreed, and Colclough acted as her attorney in removing Harris from the office of administrator, and in having her appointed; but he charged her for his services, which has been paid. Upon these facts the question arises, whether Mrs. Black is bound by this verbal promise to pay the debts which Colclough held for collection against the estate? We think the law is settled, and on principles incontrovertibly correct, that if the promise to pay the debt of another be reduced to writing, and be founded on a sufficient consideration, whether that consideration be beneficial to the promisor, or a prejudice to the promisee, the

47

promise nevertheless is binding. But if the promise be not reduced to writing, then, before it can be enforced as a valid contract, it must be shown that the consideration was beneficial to the promisor. Brown v. Barnes, 6 Ala. 694; Nelson v. Boynton, 3 Met. 396; Martin v. Black's Ex'r, 20 Ala. 309. The reason of this distinction is plain; for, to enforce a promise (not reduced to writing) to pay the debt of another, when the consideration is not beneficial to the promisor, would be wholly to disregard the statute of frauds. No promise is binding in law, unless founded on a consideration; and to hold that a consideration alone would render valid a promise to pay the debt of another, would be to hold that the promise need not be in writing in any case. On the other hand, if the consideration of the promise was beneficial to the promisor, and we should refuse to enforce it because it was not reduced to writing, we should allow the promisor to retain the benefit, and yet refuse to comply with his promise. This would be to enable him to commit a fraud. It is on this reasoning the rule is settled, that if the promise is founded on a new consideration, beneficial to the promisor, it is not within the statute of frauds, and may be enforced, although not reduced to writing.

Let us test this verbal promise by this rule. Mrs. Black employed Colclough to act as her attorney, in removing Harris and having letters of administration issued to her; but she paid him for his services. What legal benefit, then, resulted to her from her promise to pay the debts that her son owed, and which were held by Colclough for collection? When this case was before us at a previous term, we said, that we could not see that it was beneficial to the defendants' testatrix; and there is nothing disclosed by the bill of exceptions as the case is now presented, that enables us to discover any legal benefit resulting to Mrs. Black from the consideration of the promise, that will take it out of the statute of frauds. The verbal promise is therefore within the statute, and consequently void.

Let the judgment be affirmed.

NOTE.—This opinion was prepared by the late Chief Justice, and was adopted as the opinion of the court, and delivered by CHILTON, C. J.