# McCall *v.* Powell.

### *Trover for Conversion of Mules.*

1.   *Contract construed as bailment, and not conditional sale ; purchase from bailee.* When a landlord purchases a mule, and delivers it to his tenant, to be used in the cultivation of the crops on the rented lands ; promising to sell the mule to the tenant when the latter may be able to buy it, but specifying no time or price ; the transaction is not a conditional sale, but is a mere bailment, with a privilege to the tenant of purchasing, which he may or may not exercise at his option ; and a purchaser from the tenant, without notice of the bailment, acquires no title.

2.   *Estoppel by verbal admissions.*—A verbal admission, when acted on by the party to whom it is made, will often operate as an estoppel on the party making it ; but, when made after the completion of a transaction, which it did not invite or influence, it is mere evidence, and subject to explanation or contradiction.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by George N. Powell, against Hugh C. McCall, to recover damages for the conversion of two mules ; and was commenced on the 25th November, 1878. On the trial, as the bill of exceptions states, the plaintiff thus testified in his own behalf :   " He bought one of said mules from W. W. Wilkinson, in Greenville, on the 12th March, 1875, and intended to turn it over to Means, who was one of his tenants, to work on his plantation, on the lands rented by

Means; and gave said Wilkinson, to secure the purchase-money, his own and Means' obligation and mortgage, to which he signed the name of Means without his knowledge or consent, assuming to act for him in the transaction. Afterwards, witness bought the other mule, from one Peacher; and he delivered both of said mules, soon afterwards, to said Means, to be worked by him on said rented lands, under the agreement that Means was to have the possession of the mules, to work on said lands, and, when Means was able to pay for them, he was to sell them to Means. No price was agreed on between him and Means for the mules, but he intended to charge Means what he gave for them, when Means got able to buy. Means continued in the possession of the mules during the years 1875 and 1876, but has never paid for them. Witness has received from Means the bulk of the crop raised by him since the mules were so detained [delivered?], but has had no settlement with him; and Means has always owed him more than the value of the mules. Witness never knew that the mules had been mortgaged to the defendant, until in the fall or winter of 1876, when defendant took possession of them; and he never consented that Means should mortgage or dispose of them." Means testified, on behalf of the plaintiff, "that Powell delivered the possession of the mules to him, in March, 1875, under the contract that he was to take, work, control, and use them as his own, but they were to be Powell's until paid for; that he did not remember the words used, but the mules were not to be his until paid for; that no price was agreed on, but he was willing to trust Mr. Powell as to that; also, that he did not know whether he had ever paid for them or not; that he had delivered his crops to Powell, on this and other indebtedness; that he supposed he had paid some on the mules, but he and Powell had never settled, and he still owed Powell, but he did not know how much; that he never paid Powell or Wilkinson anything for said mules, that he knew of; and he further testified, that he never authorized said mules to be put in the mortgage to McCall, and only signed the same by making his mark as a witness."

"J. D. Gafford, a witness for defendant, testified, that he was the defendant's agent, and, as such agent, sold a mule to said Means and his son, for three bales of cotton, to be delivered the 1st October, 1876; and, to secure the same, said Means and his son executed a note and mortgage," made an exhibit to the bill of exceptions. (This note bound the said Means and his son to deliver *three bales of cotton* to McCall; recited, as its consideration, an indebtedness for advances to make a crop; declared a lien " on the stock and the whole

crop raised the present year" by the makers; contained a waiver of all exemptions; was signed by said Means and his son, by their marks only, and was attested by J. D. Gafford and F. M. Gafford. The mortgage to secure this note, or obligation, conveyed *three mules*, two of which were the mules in controversy in this suit, *ten head of hogs, one wagon, and the entire crop* raised by the mortgagors during the year 1876; was dated the 5th February, 1876; was signed by said Means and his son, by their marks only, and was attested by said J. D. Gafford and F. M. Gafford.) Said Gafford further testified, "that Means told him, at the time, that he had bought the mules from Powell, and had paid for them; that Means had the mules in his possession at the time, at witness' house, about four miles from Powell's; that he (witness) had no notice or information that Powell had any interest in said mules, or any claim on them; that McCall [defendant] had no knowledge of the transaction, until witness delivered the note and mortgage to him; also, that a few days after said transaction plaintiff came to him, and said he was glad the arrangement had been made, and that it would enable his tenants to work his land, and he hoped defendant would make them pay for it. Plaintiff, in his testimony, denied this conversation. One Richardson testified, that Powell came to him, as attorney for said McCall, after the mules had been seized by defendant, and asked indulgence to Means on the mortgage, stating that Means, if he had time, could work out the debt. Powell, in his testimony, denied this conversation. W. D. Newman testified, that he went to Powell's plantation, in the fall of 1875, to collect the said note and mortgage to Wilkinson, with others, against other tenants of Powell; that Powell stated to him, 'they had paid most of the debt, and he would see the balance paid;' that there was, at that time, only a small balance due on the mortgage to Wilkinson, but he did not know who had made payments on it; that the payments were made by cotton shipped to said Wilkinson."

"The court thereupon instructed the jury as follows:" "It is insisted by plaintiff, that the transaction between him and Means was a conditional, and not an absolute sale. A conditional sale of personal property is where something is to be done by either party, such as the time of payment, a price fixed or agreed on, and the future is the time specified between the parties when the sale should take place. If the evidence be, that Powell agreed with Means that he, Means, may take the mules, and work them in the crop on Powell's land, and that if Means became able to purchase he would sell; and Powell expressly reserved the title, until Means became able to purchase; this would not be a sale which

[McCall v. Powell.]

transferred title out of Powell into Means, if nothing more was done, and plaintiff would be entitled to recover."

The defendant excepted to this charge, and requested four charges, which are thus copied in the transcript: (1.) " If the jury find that, previous to the execution of the mortgage by Means to McCall, Powell delivered the mules in controversy to Means, under the contract that he was to take them, work, control, and use them as his own, but they were to be Powell's property until paid for; and that the mules were so delivered to Means by Powell; and that Means continued in possession thereof; and that McCall, while they were so in the possession of Means, without any notice, knowledge, or information of Powell's interest in the mules, for a valuable consideration paid or delivered at the time, by McCall to Means, received the said mortgage from Means to McCall; then, McCall's right to subject the mules to his mortgage debt is superior to Powell's, and the plaintiff can not recover." (2.) " If the jury believe, from the evidence, that the defendant, in good faith, and for a valuable consideration, obtained from Means, who had possession of the mules in controversy, without notice of Powell's rights, a mortgage on said mules; and that plaintiff learned the facts a few days afterwards, and told defendant's agent that it was all right, and that he was glad he had advanced to his tenant (Means), and that he would try to see him paid; then plaintiff is estopped from denying the right of Means to mortgage the mules." (3.) " If Powell delivered the mules to Means as recited in the first charge requested as above, and under the contract therein recited; then, the fact that no price was stipulated to be paid for the mules, does not make it any less a conditional sale." (4.) "If no price was agreed on between Means and Powell, to be paid for the mules, yet, if Powell testified that he intended to charge the price he paid, then this is a stipulated price, as far as the case is concerned." The court refused each of these charges, and the defendant excepted to their refusal.

The charges given, and the refusal of the several charges asked, are now assigned as error.

R. M. WILLIAMSON, W. R. HAUGHTON, and J. C. RICHARDSON, for appellant, cited *Abner v. Dudley*, 52 Ala. 572; *Sumner v. Woods*, 52 Ala. 94; *Wells v. Morrow*, 38 Ala. 125; Wharton on Agency, §§ 198, 200, 201.

J. F. CLEMENTS, and JOHN ENOCHS, *contra*, cited *Leigh Bros. v. M. & O. Railroad Co.*, 58 Ala. 165; *Chamberlain v. Smith*, 44 Penn. St. 431; *Lehigh County v. Field*, 8 Watts & S. 232;

[McCall v. Powell.]

Benjamin on Sales, 215 ; *McCravey v. Remson*, 19 Ala. 430 ; *Pounds v. Richards*, 21 Ala. 424 ; *Ware v. Cowles*, 24 Ala. 446.

BRICKELL, C. J.—We are not of the opinion this case bears such analogy to *Sumner v. Woods* (52 Ala. 94), and *Dudley v. Abner*, (*Ib.* 572), as to be controlled by their authority. In each of those cases, the transaction was esteemed, in effect, a conditional sale. The vendee was clothed with a possession, separate from, and independent of the vendor ; not opening up inquiry, or calculated to excite it, as to his title. There was a sale, for a stipulated price, which the vendee was bound to pay. A condition was annexed, that the vendor, if the price was not paid, when it became due and payable, should have the right to resume possession of the property ; and that until the price was paid, the title should remain in him. As to *bona fide* purchasers from the vendee, having no notice of the condition annexed, it was held the sale must be regarded as absolute, though, as between the parties, it would be conditional. The transaction in the present case, as the evidence introduced by the plaintiff tended to show (and it was not contradicted), was of an entirely different character. A landlord purchased two mules, and turned them over to a tenant, to cultivate crops on the rented premises ; promising the tenant that he would sell the mules to him, when he was able to purchase them. No price was agreed upon ; the tenant testifying, that he was willing to trust the landlord as to the price, if he was able to purchase ; and the landlord testifying, that he expected, or intended, to charge only the price he had paid for the mules. The transaction was a mere bailment, with a privilege of purchasing, which the tenant could exercise or not at his option. *Chamberlain v. Smith*, 44 Penn. St. 431. And bailments are expressly excepted by C. J. TILGHMAN from the operation of the principles laid down in *Martin v. Mathiatt* (14 Serg. & Rawle, 214), the leading authority relied upon to support the conclusions reached in *Sumner v. Woods*, and *Dudley v. Abner*. A sale is defined as a transfer of the *absolute* or *general* property in a thing, for a price in money, paid or promised ; or, as sometimes defined, it is an agreement of both parties, that the property shall pass from one to the other, for a consideration given, or promised to be given. The price to be paid, the consideration moving the vendor, and a transfer of property, are of its material constituents. The landlord and tenant, in this case, contemplated a sale in the future ; or the transaction, it may be, amounted to an offer to sell, time being given for acceptance, when, if there was acceptance, the price would be paid. There was no sale, nor was there a

possession in pursuance of an agreement to sell. The tenant is suffered to use the mules in cultivating the premises rented of the landlord, to the proper cultivation of which they were necessary; and such cultivation was to the interest alike of landlord and tenant. Such transactions between landlord and tenant are not, as were the contracts in *Sumner v. Woods*, and *Dudley v. Abner*, without the usual course of business; nor do they afford the opportunity for frauds upon purchasers from, and creditors of the tenant, which those contracts were supposed to afford as to purchasers from, or creditors of the vendee. They are, doubtless, of very frequent occurrence, and are necessary to stimulate the energy, industry, thrift, and economy of a large class of the agricultural tenantry. No purchaser from, or creditor of the tenant, can be misled by them to his injury, if he will exercise the diligence, and make the inquiries, which the present condition of things naturally excited. If he does not exercise it, he has only his own carelessness, or his willingness to remain in ignorance, to blame, if he suffers from dealing with the tenant. We see no error in the instructions the Circuit Court gave the jury, nor in the refusal of the first, third, and fourth instructions requested by the appellant.

2. Verbal admissions, which are acted on by the party to whom they are made, will often operate as an estoppel upon the party making them. But admissions made after a transaction is complete, which they did not invite or influence, do not operate as an estoppel. They are mere evidence of the facts admitted; subject to contradiction or explanation. There was no error in the refusal of the second charge requested by the appellant.

The judgment is affirmed.