FARMINGTON VILLAGE CORPORATION

*vs.*

FARMINGTON WATER COMPANY.

Franklin.    Opinion October 5, 1899.

*Sales.   Contract.   Option.   Water Company.   Spec. Performance.*

The defendant water company contracted in writing to supply the plaintiff village corporation with water for a term of years and also agreed in the same writing to terms by which, at the expiration of the term, the plaintiff might take over the defendant's rights and works, at an appraisal to be fixed by three disinterested men, one to be selected by each of the parties and a third one by the two so selected, said appraisal to be the sum at which the plaintiff " shall have the right to buy said rights and works, and for which said company agree to sell said corporation the works and rights aforesaid."

At the expiration of the term the corporation voted " to proceed to ascertain the price at which it may purchase the works and rights " of the water company as provided in the contract, and selected a disinterested appraiser. The defendant company though notified thereof and requested to select an appraiser on its part declined so to do, insisting that it was not required to do so by the terms of the contract until the village corporation had first bound itself to purchase at whatever sum might be fixed by the appraisers.

Upon a bill in equity by the plaintiff to obtain specific performance of the contract by compelling the water company to select such an appraiser, *held;* that the defendant water company clearly and expressly yielded an agreement to sell at the appraisal; that the village corporation did not even by inference yield an agreement to buy at the appraisal; that it, however, retained the right to buy; and that this option of purchase was to be exercised after the appraisal.

ON REPORT.

Bill in equity, heard on bill, answer and testimony to compel specific performance of a contract, dated October 17, 1891, between the parties, by which the plaintiff claimed it had the right to purchase, and the defendant was obliged to sell, the rights and works

of the defendant at the plaintiff's option after an appraisal. The plaintiff's contention, as stated by it, appears in the eleventh paragraph of its bill, as follows:— "That your complainants are desirous of ascertaining the price at which they shall have the right to purchase said company's entire works, rights and franchise and for which the said company agreed to sell said corporation its entire works, rights and franchise aforesaid, and which contract and agreements therein contained, the said corporation are desirous of having fulfilled by said respondents; but as the Farmington Water Company will not appoint a man to assist in fixing the value of its works and rights, in accordance with the terms of said contract, your complainants are deprived of their legal rights, and are remediless in the premises, and that they have no adequate remedy at law, whereas the remedy in equity is ample."

The prayer of the bill was that the defendant " may be required to select a disinterested man, and in fixing an appraisal of the said Farmington Water Company's entire works, rights and franchise, as provided in its contract, etc.   .   .   .   ."

The plaintiffs relied principally on article 10 of the contract between them and the defendant water company which provided, among other things, for an appraisal of the works and rights of the Farmington Water Company, "and said appraisal shall be the sum at which the said corporation shall have the right to buy said works and rights, and for which the said company agree to sell to said corporation the works and rights aforesaid."

Article 11 of the contract is as follows:   "And in consideration of the above premises and agreements of said company, the said corporation hereby agrees to pay to said company for the use of water for the purposes aforesaid, and in the manner and on the conditions aforesaid, the sum of twelve hundred dollars ($1200) per annum for the said term of five years, said sum to be paid in ten equal semi-annual payments, as follows, viz:   .   .   .   ."

The defendant water company refused to choose an appraiser upon the ground, as it alleged, that the corporation had failed in the performance of a condition precedent, to wit, to vote to purchase the system of the company at the price to be ascertained by

the appraisers. And contended that it was not legally, or equitably, bound to proceed with an appraisal under article 10 of the contract, until the corporation had signified its intention to purchase, or voted to purchase, or in some legal manner bound itself to purchase and pay for the water system at the sum found by the three disinterested appraisers.

The issue thus presented on the part of the defendant company is thus stated in their answer, with other defenses:

"And the defendant company admits that it was the intention of the parties thereto, as therein expressed, that the Farmington Village Corporation should have the right to purchase the entire works and rights of the said Farmington Water Company at the expiration of said contract, at an appraisal to be made as therein set forth, but, that whatever right or option to purchase was thereby given to said complainant company must and should be exercised before the said appraisal had been made; and that to entitle the said Farmington Village Corporation to an appraisal, it must signify its consent to and agree to purchase said entire works and rights at the sum to be found, or that might be found, by said appraisers.

"That the said complainant corporation has not only neglected so to do, but has expressly refused to so signify its consent and agreement, and the said defendant company refers to the records of the meetings of the Farmington Village Corporation, held December 7, 1897, and January 19, 1898, annexed to the complainant's bill in proof thereof,   .   .   .   .

"That whether the person chosen, viz: Hon. Enoch Foster, was ready at the time of the service of said notice to discharge the duties required of him as a member of said committee of appraisal, the defendant has no knowledge.

"That at the time of the service of said notice his appointment or choice by said committee had not been approved by the corporation, and though requested by the defendant company to give the name of the appraiser so chosen, and referred to in said notice, the committee of said corporation, and the officers thereof, refused so to do.

"The defendant company further avers that it was not the intention of the parties to said contract, as therein set forth in said article 10, that the said complainant could exercise its right of purchase after the value of the said works and rights had been fixed by the appraisers, thus leaving it to the option of the corporation to purchase at the sum so fixed, and in case of refusal to purchase entailing upon the defendant the large and unnecessary expense attending such appraisal, but that said corporation must exercise such right before the commencement of proceedings to secure such appraisal, or at least before it could require the defendant company to appoint a disinterested person as appraiser under said section."

It was admitted that the counsel for the Farmington Village Corporation was notified several times by the counsel for the defendants, after the expiration of the contract, and before the bringing of the bill in equity, that they were willing to proceed to an appraisal and sell their property after plaintiff corporation had voted to buy the same.

It was also admitted that the notices of the Farmington Village Corporation to the Farmington Water Company, of the appointment of an appraiser, were seasonably given.

A witness called by the defendants testified, subject to objection:—

"I was acting for the Farmington Water Company at the time this contract was made.

Q. "Will you state the circumstances and the situation of the parties to the contract at the time of the making?"

A. "There were several meetings of the corporation held at different times, and it was a long time before the corporation voted to purchase the water rights of the company, and the question arose as to future monopoly in case the water company established its works. . . . . And the question arose as to whether the water company would not have a monopoly in it later, and the corporation wanted an option to purchase. As I recollect it, that was one of the strong inducements held out to the corporation in order to obtain a vote of the corporation—that they could have an option to buy. And as to the terms of the contract, it was

suggested how they should come at the appraisal, and the reference was suggested, and, as was intended to be, incorporated into the terms of the contract. As an inducement for the corporation to purchase, the water company inserted in the contract the provision giving them the right to purchase, as I remember it."

By the court:

Q. "Whether the question was discussed at all, that the agreement to purchase on the part of this corporation should be a condition precedent to the exercise of this right?"

A. "I don't know that that question ever arose in that form. I think the question arose as to how the matter should be determined in case the corporation should want to buy, and a reference was suggested, and the reference was put in that form. I could only state the understanding, and as the understanding has been incorporated."

Q. "As I understand you, the principal question discussed, and the principal desire indicated by the parties at that time, was to protect themselves against future monopoly?"

A. "Yes, your Honor. It was urged at the time, at the different hearings, and the question arose, whether the corporation was in a legal position so it could construct a plant of its own."

It was admitted that Enoch Foster was ready and willing to act as one of the appraisers.

*Jos. C. Holman and Frank W. Butler*, for plaintiffs.

The rights of purchase were as much a part of the consideration as the water to be furnished; the company could as legally have shut off half the hydrants provided for in its contract, as to refuse to proceed with the corporation to fix the valuation as therein agreed upon; both were promised the corporation, and both were parts of the entire whole, which the corporation were to receive. Had the water company closed half its hydrants after entering into the contract, equity would have immediately opened them. If it would have enforced that part of the contract, it certainly ought to enforce this part.

The corporation is asking for nothing which it has not paid for and it is not entitled to receive; it has already paid for the right

to have an appraisal made as provided in the contract, and asks that it may be done.

Article 11 of said contract provided, "in consideration of the above premises and agreements of said company, the said corporation agree to pay," etc. Not in consideration of the water alone, but in consideration of all the premises and agreements, including the agreement for an appraisal.

The corporation could not intelligently vote to buy before an appraisal was made, as the amount fixed might exceed the sum which the corporation could legally raise, and as a matter of precaution the agreement for an appraisal was made, reserving to the corporation the right to first fix the value and then vote to buy, if they see fit.

If defendant's contention is correct, then the sum might be much larger than the constitutional limit of indebtedness; and then the corporation could not buy the property for this reason, and it might then be liable in damages to the defendants.

*E. E. Richards*, for defendant.

The language of article 10 is ambiguous, the terms and conditions incomplete, leaving much to implication. There is in it no express provision as to the point in issue, and what the intent of the parties may have been as to the relative time of the exercise of this option on the part of the corporation, is left to implication. This circumstance in itself is significant. The article seems now of importance to the parties. But it is evident that, at the time it was drafted, it could not have been carefully considered, or it would have been drafted in more specific and clear terms, and at greater length. The inference would be fair that it was drafted and adopted as a minor feature of the contract lightly viewed by the parties.

The legal and proper inference from the language itself is, that the vote or agreement to buy must precede any act on the part of the company towards ascertaining the value. It was merely intended, by the language used, to fix the obligation of the company to sell, and make certain the right of the corporation to purchase.

Rules of construction:   *Worcester Gas Light Co.* v. *Worcester,*
110 Mass. 353; *Newton* v. *McKay,* 29 Mich. 1; *Hayes* v. *O'Brien,*
149 Ill. 403;   *Gray* v. *Clark,* 11 Vt. 583; *Veazie* v. *Forsaith,*
76 Maine, 179; *Snow* v. *Pressey,* 85 Maine, 408; *Corwin* v. *Hood,*
58 N. H. 401; *Plano Manf. Co.* v. *Ellis,* 68 Mich. 101; *Davis* v.
*Belford,* 70 Mich. 120; *Hoerath* v. *Brooks,* 41 Ill. App. 554;
*Hawes* v. *Smith,* 12 Maine, 429; *Ricker* v. *Fairbanks,* 40 Maine,
43; *Smith* v. *Blake,* 88 Maine, 241; *Field* v. *Leiter,* 118 Ill. 26;
*Merrill* v. *Gore,* 29 Maine, 348.

Among the questions and objections which arose, on the part of
the corporation, was that of the future monopoly of the company
in case the company established its plant.

To obviate this objection article 10 was introduced into the contract.   In the light of this situation, the main object being simply
to prevent a monopoly, and in order to do so to give the corporation an opportunity to purchase the same at a value which
three disinterested persons found to be a fair one, is it to be presumed from the language used that the intent of the parties was
to impose upon the defendant company the burden and expense
and uncertainty of an appraisal, and at the same time preserving
to the corporation the privilege of acceptance or rejection after the
result of the appraisal had been made known to them?

If the purpose of the article in question is to furnish an opportunity to the corporation to buy, at a fair price, and nothing more,
the construction placed upon it by the defendant company meets
that intention.

If the vote or agreement to purchase must precede the choice of
appraiser, this bill cannot be maintained, as the corporation has not
only neglected to agree to buy, or vote to purchase, but has refused
to do so at a legal meeting of its voters.   Having therefore failed
in the performance of a condition precedent incumbent on it to
perform, it is not entitled to specific performance on the part of
the water company.   *Warren* v. *Wheeler,* 21 Maine, 484; *Dana* v.
*King,* 2 Pick. 155.

Construction of similar clause in contract:—*Montgomery Gas
Light Co., Applt.,* v. *City Council of Montgomery,* 4 L. R. A. 616.

SITTING: PETERS, C. J., EMERY, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

EMERY, J.   In a written instrument of contract between the Farmington Village Corporation and the Farmington Water Company, dated October 17, 1891, (in which are various provisions as to the nature and extent of the water supply services to be rendered by the water company for the term of five years,) is the following provision as to the right of the village corporation to take over the company's rights and works at the end of the five years, viz:

"Article 10.   It is further agreed that the said corporation shall have the right to purchase the said Company's entire works and rights at the expiration of the term of this contract, or during the term of any renewal thereafter, at an appraisal to be fixed by three disinterested men, one to be selected by the said Corporation, one by the said Company, and the third by the two so selected;—and said appraisal shall be the sum at which the said Corporation shall have the right to buy said works and rights and for which said Company agree to sell said corporation the works and rights aforesaid."

At the expiration of the term of five years, the village corporation voted "to proceed to ascertain the price at which it may purchase the works and rights" of the water company as provided in the contract, and selected a disinterested man as appraiser upon its part.   The water company, though notified of the action of the village corporation and requested to select an appraiser upon its part, declines to do so, and insists that it is not required by the terms of the contract to do so, until the village corporation first binds itself to purchase at whatever sum might be affixed by the appraisers.

This bill is brought to obtain a specific performance of the contract, by compelling the water company to select an appraiser under Article 10.   The question raised is whether by the terms of the contract the village must bind itself to purchase at the appraisal before obtaining an appraisal, or may obtain an appraisal and then elect whether to purchase at the sum fixed.

Various arguments of more or less cogency have been advanced upon either side, but the last clause of Article 10, seems to us decisive.

It is first provided in the article, that the village corporation "shall have the right to purchase the said company's entire works and rights . . . . at an appraisal to be fixed by three disinterested men, one to be selected by said corporation, one by the said company, and the third by the two so selected." This is all the language as to the rights and obligations of the parties before the appraisal. Had the parties stopped there, this language alone might indicate perhaps that the village corporation must elect and bind itself to purchase at the appraisal, as was held in *Montgomery Gas Light Company* v. *City Council of Montgomery*, 87 Ala. 245, (4 L. R. A. 616) by the defendant. The parties, however, were not content with this language. They did not leave to inference from it the rights and obligations of the parties after the appraisal. They proceeded to expressly describe them by the following additional language, "and said appraisal shall be the sum at which the said corporation *shall have the right to buy* said works and rights and for which the said company *agree to sell* said corporation, the works and rights as aforesaid." The antithesis is conspicuous and we must assume that it was designed. The water company clearly and expressly yielded an agreement to sell at the appraisal. The village corporation did not even by inference yield an agreement to buy at the appraisal. It expressly retained however "the right to buy." This option of purchase was to be exercised after the appraisal. There was no such clause or language in the contract construed by the Alabama court in *Montgomery Gas Light Co.* v. *City Council of Montgomery*, supra, cited by the water company. The water company must at the request of the village corporation co-operate in an appraisal. After such appraisal the village corporation may or not, as it deems best, exercise its "right to buy." Such was the express contract of the parties.

*Bill sustained with costs.*