WASHINGTON-OREGON CORP. et al. v. CITY OF CHEHALIS et al

(District Court, W. D. Washington, S. D.   January 27, 1913.)

No. 1,215.

1. FRANCHISES (§ 2*)—CONSTRUCTION OF GRANT.

A grant of a franchise or privilege is to be strictly construed in favor of the public. Whatever is not unequivocally granted is withheld, and nothing passes by implication.

[Ed. Note.—For other cases, see Franchises, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. WATERS AND WATER COURSES (§ 183*)—FRANCHISE TO WATER COMPANY—CONSTRUCTION.

A provision, in an ordinance granting a franchise to a water company and contracting for hydrants, that during the term of the grant the city would not "contract with any other person or persons, corporation or corporations, for a supply of water," does not preclude the city from constructing a water system of its own during the term.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 277, 278; Dec. Dig. § 183.*]

3. COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

Where a water company alleges in good faith that it has a contract with a city, a federal court has jurisdiction of a suit to enjoin its impairment, and also to decide all other questions arising in the case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*

Jurisdiction in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7; Barnhart v. Switzler, 105 C. C. A. 262.]

4. WATERS AND WATER COURSES (§ 183*)—WATER COMPANIES—CONTRACT WITH CITY.

Where an ordinance granting a franchise to a water company gave the city an option to purchase its plant at a value to be fixed by appraisers, and provided that in case the city decided to purchase it should serve notice of such determination 6 months prior to the time the purchase was to be made, but did not specify whether such notice should be given before or after appraisal, a mere request by the city for the appointment

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

of appraisers did not bind it as an election to purchase, after the appraisers had failed to agree

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 277, 278; Dec. Dig. § 183.*]

In Equity. Suit by the Washington-Oregon Corporation and the Fidelity Trust Company against the City of Chehalis, John T. Coleman, Mayor, Edward Deggeller, Commissioner and City Clerk, Frank J. Allen, City Treasurer, and C. A. Studebaker, City Attorney. On motion to modify injunction. Motion granted.

C. A. Johns, of Portland, Or., and Sullivan & Christian, of Tacoma, Wash., for complainants.

W. A. Reynolds, of Chehalis, Wash., for defendants.

CUSHMAN, District Judge. This matter is now before the court upon respondents' motion to modify an order, heretofore granted upon a stipulation, the modification to allow the respondents to award a certain contract for the construction of certain waterworks and to sell bonds of the city of Chehalis therefor. At the time of making the order upon stipulation, the demurrer to the complaint was overruled, and respondents have answered. The hearing upon the motion to modify the order, whether it be considered as a rehearing of the demurrer or a motion for decree on bill and answer, goes to the merits of the whole controversy. The order referred to in the motion was one denying an interlocutory injunction; respondents having stipulated with complainants that they would not award the contracts sought to be awarded, or market their bonds therefor, until the further order of the court, both complainants and respondents reserving the right to ask for a modification of the order.

The bill and answer show that the Washington-Oregon Corporation is a corporation of the state of Washington, and that, in 1891, that corporation's grantors secured, from the respondent the city of Chehalis, a 30 years' franchise, granting the right to use the streets, alleys, and other public grounds in said city, for water mains and pipes, for the purpose of furnishing the said city and its inhabitants with pure, fresh water. It was provided that the water was to be taken from the Newaukum river, or one of its branches. Provision was made for a certain number of fire hydrants, and that the city should pay an annual rental of $100 for each hydrant, for 30 years, for the first 20 hydrants furnished, and not more than $50 per annum for each additional hydrant. Water was to be furnished free for certain city purposes. Sections 9 and 10 of the franchise are as follows:

"Sec. 9. It shall be and is within the option and right of the city of Chehalis, anything in this ordinance to the contrary notwithstanding, at any time after ten years, to terminate all the rights and privileges granted and conferred herein to the said Francis Donahoe, La Fayette Lawrence and C. W. Maynard, their and each of their heirs and assigns and successors, by purchasing from them the entire plant and property by them owned and used for supplying, storing, and distributing water to the city of Chehalis and its inhabitants. This right of purchase includes all dams and rights

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thereto, flumes, ditches, and rights of way therefor, reservoirs and rights thereto, property pipes and mains and fixtures for supplying and distributing water. The terms of such purchase are as hereinafter stated, to wit: That in order to determine the value of the plant a commission be selected for that purpose, two of said commissioners to be appointed by the said city and two to be appointed by Francis Donahoe, La Fayette Lawrence and C. W. Maynard, their heirs, assigns and successors, and the four commissioners thus selected shall elect a man and the five thus chosen shall constitute a full board of appraisers to determine the value of said water plant, and in case said city shall determine to make such purchase it shall serve notice of such determination on the proper party or parties at least six months prior to the time the purchase is to be made and take effect.

"Sec. 10. The city of Chehalis, for the consideration hereinbefore stated, hereby agrees that this ordinance and franchises and rights contained and granted thereby to the said Francis Donahoe, La Fayette Lawrence and C. W. Maynard, their heirs, assigns and successors, shall continue in full force for a period of thirty years, unless sooner terminated as in this ordinance provided, during which time the city of Chehalis agrees not to contract with any other person or persons, corporation or corporations for a supply of water. Said period of thirty years is to date from the passage and taking effect of this ordinance. Provided, that the said Francis Donahoe, La Fayette Lawrence and C. W. Maynard shall for themselves, their heirs, assigns and successors, within twenty days from the date of the passage and approval of this ordinance, accept the same and signify such acceptance with its terms and provisions in writing signed by them and filed with the city clerk of said city. Such acceptance may be substantially in the following form: [Setting out form.]"

Acceptance of the franchise is shown, and full performance by complainant Washington-Oregon Corporation is alleged in the bill. During the year 1912 the voters of said city, at an election held for the purpose, voted the issuance of bonds for the construction of a water system and authorized the construction of such works by the city. The bonds have been advertised for sale, and bids for the construction called for and received by the city officers.

The bill avers that the complainant Fidelity Trust Company is the holder of the mortgage bonds of the Washington-Oregon Corporation to a large amount, that the latter's franchise is an exclusive one, and that the city, by its ordinance calling the election to vote upon the question of a city water system and the proceedings taken thereunder, impaired the obligation of its contract with the complainant Washington-Oregon Corporation, in violation of section 10, art. 1, of the Constitution of the United States. The bill of complaint reads, in part, as follows:

"That under the terms and provisions of said ordinance, and to carry such terms and provisions into effect, the defendant city, on or about the 1st day of August, 1912, did select two commissioners on its part, and your orator selected two commissioners on its part. That pursuant to agreement, such commissioners met for the purpose of selecting the fifth, and that the commissioners representing your orator, acting in good faith, did undertake to select and agree upon the fifth commissioner for such purpose, but that in truth and in fact the two commissioners so selected by the defendant city, and at the instance and request of the city, did not act in good faith for such purpose and would not agree to the selection of a fifth commissioner who was fair and reasonable and had a knowledge of the duties which he was to perform and the value of the properties, and for such reason the fifth commissioner was not selected.

"That to carry out the terms and provisions of section 9 of said ordinance, your orator, Washington-Oregon Corporation, is ready and willing and hereby

202 F.—38

undertakes and agrees that your honor, the judge of this court may select such fifth commissioner, and that it will abide by such selection, and that the two commissioners selected by the said city and the two commissioners selected by your orator, together with the commissioner to be appointed and selected by your honor, may and shall meet, and that such board of five commissioners so selected shall then ascertain and determine the amount which your orator shall have and receive for its property, plant, and water system invested in and for said city pursuant to said ordinances, and that it will abide by the decision of such commissioners, and will execute good and sufficient conveyances to said city pursuant to the award made by said commissioners upon the receipt of the price ascertained and agreed upon by the said commissioners.

"Your orator further shows that the contracts between it and the city, granted under the provisions of Ordinances No. 135 and 137, which is for a period of thirty (30) years from and after the date of acceptances, and of which it is now the owner and holder, would be impaired and practically destroyed if subjected to the competition of a system of waterworks owned and operated by the city, which the city proposes to operate and construct under the pending proceedings, and which the defendant city will construct, maintain, and operate if it is permitted to sell and does sell its bonds, and if it is permitted to contract and does contract for the construction and operation of such plant or water system under the pending proceedings."

The answer, in part, reads as follows:

"It is admitted that on or about the 1st day of August, 1912, the defendant city selected two commissioners on its part, and that the plaintiff Washington-Oregon Corporation selected two commissioners on its part, in pursuance of the provisions of said section 9 of said Ordinance No. 135, and that said commissioners met for the purpose of determining the value of the plant of said plaintiff; but it is denied that the commissioners representing the plaintiff company acted in good faith, or undertook to select and agree upon a fifth commissioner in good faith, for the purpose of ascertaining the value of said plant, and defendants allege that in truth and fact the commissioners so selected by the plaintiff company would not agree to the selection of a fifth commissioner who was fair and reasonable and had knowledge of the duties which he was to perform and the value of the water plant of said company, and defendants aver the fact to be that said commissioners so selected by the plaintiff company would agree to no other value of the plant of said company, other than upon its then net income and revenue, return to said company, or upon any fifth commissioner who it was not known or reasonably believed would fix the value of the plant upon any other value than the net income and revenue return upon said plant, and that because of the determination of the commissioners representing the plaintiff company to agree upon and fix no other value, or upon any fifth commissioner who would take into account any other than the net income-producing value of said plant, the said commissioners failed to agree, and they made and entered into a finding, and that they agreed to disagree, and the company so notified said city."

It is further alleged that the present water supply furnished by plaintiff is polluted, by reason of its being taken from the river below the outlet of tributaries flowing through thickly settled communities: that, in order to provide suitable water, a more distant supply will have to be obtained; and that complainant will not be able, during the life of its franchise, to provide such suitable supply.

The following authorities are relied upon by complainant: Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; Mer. Trust & Dep. Co. of Baltimore v. City of Columbus, 203 U. S. 311, 27 Sup. Ct. 83, 51 L. Ed. 198; Vicksburg v. Vicksburg Water Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, 6 Ann.

Cas. 253; Cogswell et al. v. Cogswell et al. (Wash.) 126 Pac. 433; Cooke v. Miller, 25 R. I. 92, 54 Atl. 927, 1 Ann. Cas. 30; Grosvenor v. Flint, 20 R. I. 21, 37 Atl. 304; Town of Bristol v. Bristol & Warren Waterworks, 19 R. I. 413, 34 Atl. 359, 32 L. R. A. 740; Foster, page 127, 17(a).

The following authorities are relied upon by the defendants: Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353; Helena Waterworks Co. v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245; Water, Light & Gas Co. v. Hutchinson, 207 U. S. 385, 28 Sup. Ct. 135, 52 L. Ed. 257; City of Joplin v. Southwest Missouri Light Co., 191 U. S. 150, 24 Sup. Ct. 43, 48 L. Ed. 127; Hamilton Gas, Light & Coke Co. v. Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963; Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92; Skaneateles Waterworks v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585; Tillamook Water Co. v. Tillamook (C. C.) 139 Fed. 405; North Springs Water Co. v. Tacoma, 21 Wash. 517, 58 Pac. 773, 47 L. R. A. 214; Farmington Village v. Farmington Water Co., 93 Me. 192, 44 Atl. 609.

[1] It is the contention of complainants that the water company's franchise is exclusive, and that the city is precluded thereby from constructing a water system of its own. Walla Walla City v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353; Vicksburg v. Vicksburg Waterworks Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253.

"Only that which is granted in clear and explicit terms passes by a grant of property, franchises, or privileges in which the government or the public has an interest. Statutory grants of that character are to be construed strictly in favor of the public. Whatever is not unequivocally granted is withheld, and nothing passes by implication." Knoxville Water Co. v. Knoxville, supra.

[2] As in any other contract, the language of the franchise must be looked to for the intention of the parties. In the Walla Walla Case, the franchise was for 25 years, and provided that, until it was avoided by a court of competent jurisdiction, the city could not erect, maintain, or become interested in other waterworks. Held, in the absence of such a judgment, the city could not take steps to provide a water system of its own. In the Knoxville Case, by the franchise, the city agreed "not to grant to any other person or corporation any contract or privilege to furnish water to the city of Knoxville * * * for the full period of 30 years." Held, that the city was not, in the absence of a special stipulation to that effect, precluded from establishing its own system of waterworks. In the Vicksburg Case, the exclusive right and privilege was granted for a period of 30 years to erect, maintain, and operate a system of waterworks. Held, that the franchise precluded the city from erecting its own waterworks during the life of the franchise. While so holding, the court reiterated that grants and franchises are to be strictly construed in favor of the public, and that nothing is to be taken by implication. The Knoxville Case is distinguished.

As shown above, in the case now under consideration, the language of the franchise, which it is contended is exclusive, is that:

"The city of Chehalis * * * hereby agrees that this ordinance and franchise and the rights contained and granted thereby * * * shall continue in full force for a period of 30 years, * * * during which time the city of Chehalis agrees not to contract with any other person, or persons, corporation or corporations, for a supply of water."

In the light of the foregoing authorities, without citing others, the court holds that the city of Chehalis has not, by the franchise in question, precluded itself from erecting a water system.

Complainants further contend that the city should not be allowed to proceed with the erection of a water system, without carrying out the appraisement by a commission, as provided ·in the franchise, and purchase of complainant's waterworks under such appraisal. Complainants contend for a specific performance of this provision.

Respondents in defense, as above set out, allege that the arbitration failed, not through the city's fault, but through the fault of complainants, and that, owing to the impure water supply, complainant's inability to furnish pure water, and the city's action already taken, in authorizing, by election, the construction of waterworks of its own, together with the receipt of bids therefor, it should not now be compelled to undertake further arbitration and the purchase of complainant's water system.

In the Knoxville Case, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353, supra, where there had been a failure to arbitrate such a matter, it is said:

"It is not important to inquire which side, if either, was to blame in this matter."

[3] On this phase of the contention, involving the general law, and not the Constitution, the court's jurisdiction has been questioned.

"All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair." City R. R. v. Citizens' R. R. Co., 166 U. S. 557, at page 563, 17 Sup. Ct. 653, at page 655 (41 L. Ed. 1114).

There is no question but that the federal question in the case now before the court was raised in good faith.

"The federal question, as to the invalidity of the state statute, because, as alleged, it was in violation of the federal Constitution, gave the Circuit Court jurisdiction and, having properly obtained it, that court had the right to decide all of the questions in the case, even though it decided the federal questions adversely to the party raising them, or even if it omitted to decide them at all, or decided the case on local or state questions only." Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, at page 191, 29 Sup. Ct. 451, at page 454 (53 L. Ed. 753).

The court would, therefore, have jurisdiction of the whole controversy, though holding against complainants on the question of the impairment of the contract.

[4] Passing to the merits of complainant's claim to specific performance of the provision for the appraisal and purchase of its water system, it will be seen that section 9 of the ordinance is of doubtful

meaning. After giving the city an option to buy after ten years, it is provided that "the terms of such purchase are as hereinafter stated." Provision is then made for determining the value by commissioners, two to be chosen by the city and two by the owners of the franchise, and these four to select a fifth. The section then ends with this provision:

"And, in case said city shall determine to make said purchase, it shall serve notice of such determination on the proper party or parties at least six months prior to the time the purchase is to be made and take effect."

It is not clear whether the valuation contemplated was to precede or follow the six months' notice. There is nothing in the record to show the giving of this notice by or on behalf of the city. Aside from the allegations from the pleadings above set out, all that there is in this particular, disclosing the intention of the parties, is a letter from the city clerk to the complainant Washington-Oregon Corporation, requesting the appointment by that complainant of two appraisers to meet with two appraisers appointed by the city to appraise the value of the waterworks owned by the complainant. Complainant, before selecting its two appraisers, then requested the city to agree:

"That, if you do not purchase the waterworks, you will stand the entire charge of assignment [appraisement], including ours."

This the city agreed to do, and the four appraisers chosen reported, after three meetings, that they were unable to agree upon a fifth man to act with them, and that it was useless for them to remain longer in session. Complainant thereafter wrote the city, offering, "as the arbitration had fallen through," to sell the waterworks to the city for $95,000. The city refused their offer, and offered the complainant $50,000.

It is clear that the parties construed the ordinance as not requiring the city to bind itself to buy until after an appraisal and the fixing of a definite price. It is also clear that the appraisal was abandoned both by the appraisers and the parties to the suit. The Fidelity Trust Company, though taking no part in these negotiations, would be in no better position to insist on the carrying out of the appraisement than the water company.

"The acceptance [of an option], to be effective, must be unequivocal and unconditional, and must correspond to the terms of the option." 39 Cyc. 1238 et seq.

The action taken on the part of the city would not amount to such an acceptance. The contract giving the city the right to purchase upon certain conditions, it is not necessary to consider the extent of the city's rights in determining the price at which it might purchase the water system, should it desire to do so after an attempt and failure to arbitrate. It may be that, so far as the city is concerned, having granted a franchise, which has been accepted and used for more than 20 years, the grant being the consideration for the option, equity would find a way, upon suit by the city, to fix the price at which the city might purchase, upon the failure of such arbitration. Such a ruling would find support in the authorities cited by complainants.

The city could not be put in statu quo as before the grant; but, as complainants could not compel the city, in the first instance, to take advantage of its option, it is now in the same situation, in all respects, as before the city's request and suggestion for the appointment of appraisers. There has been no such part performance of the contract as to take it out of the general rule that an executory agreement to arbitrate is revocable by either of the parties, and bring it within the exception upon which the cases cited are based.

The motion to modify the order will be granted, the order to become effective 10 days from the date of this order, unless otherwise directed.