PUGET SOUND TRACTION, LIGHT & POWER CO. v. CITY OF TACOMA.

(District Court, W. D. Washington, S. D.    September 19, 1914.)

No. 16.

1. INJUNCTION (§ 136*)—PRELIMINARY INJUNCTION—RIGHT TO REMEDY.
    An electric company is not entitled to a preliminary injunction to restrain a city from asserting its right to certain poles and wires claimed by both parties, nor to restrain enforcement of an ordinance requiring complainant to place its wires underground, where no force or violence is threatened in either case.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

2. ELECTRICITY (§ 9*)—ELECTRIC COMPANIES—ORDINANCE REQUIRING PLACING OF WIRES UNDERGROUND—CONSTRUCTION.
    A city ordinance passed June 11th, requiring an electric company to place all its wires constructed after May 1st preceding underground, held not to apply to lines which had been purchased by the company after May 1st from another company, which had constructed the same in accordance with the ordinance then in force.
    [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 4; Dec. Dig. § 9.*]

3. ELECTRICITY (§ 9*)—ELECTRIC COMPANIES—FRANCHISE—POWERS RESERVED BY CITY—"CORPORATION."
    An ordinance granting a franchise to an electric company provided that the city should have the right at any time to require it to place its wires underground, but that it should not be required except on the same streets and to the same extent as the wires "of all other persons or corporations used to transmit electricity" were required to be placed underground. Throughout the ordinance the city was referred to as "the city."    Held, that the word "corporations," as used in such provision, did not include the city, and the fact that the city itself maintained wires above ground did not invalidate an ordinance requiring the company to place its wires underground.
    [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 4; Dec. Dig. § 9.*
    For other definitions, see Words and Phrases, First and Second Series, Corporation.]

---

4. LIS PENDENS (§ 11*)—PERSONS BOUND—PURCHASERS PENDENTE LITE—EF-
FECT OF SUPERSEDEAS.

An electric company brought suit in a state court to enjoin a city from
forfeiting its franchise, the result being a decree adjudging a forfeiture,
that the company was no longer entitled to exercise any privilege there-
under "except to remove its poles, lines, wires, and other property from
the streets of the city," and that unless so removed within 60 days the
same should be the property of the city, as provided in the franchise ordi-
nance. Pending an appeal by the company, the court granted a super-
sedeas, containing a provision that "all proceedings under said judgment
shall be stayed, and said judgment shall not become effective pending the
said appeal to the Supreme Court. It is the intention of this order that
the running of the 60-day period, allowed for the removal of the poles
and wires from the streets, should be suspended during the pendency of
this appeal." Held, that the effect of such order was only to stay af-
firmative action on the judgment pending the appeal, and that on its af-
firmance it became in full force and effect; that another company, which
bought the poles, wires, etc., from the plaintiff pending the appeal, ob-
tained no greater rights than the seller, and only the right to remove the
same within the time given by the decree.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. §§ 28–30; Dec.
Dig. § 11.*]

In Equity. Suit by the Puget Sound Traction, Light & Power Com-
pany against the City of Tacoma. On motion for preliminary injunc-
tion. Denied.

James B. Howe, of Seattle, Wash., J. A. Shackleford, of Tacoma,
Wash., and Hugh A. Tait, of Seattle, Wash., for complainant.

T. L. Stiles and Frank M. Carnahan, both of Tacoma, Wash., for de-
fendant.

CUSHMAN, District Judge. Application is made by complainant
for a temporary injunction, restraining the defendant from enforcing a
certain ordinance requiring the complainant to put its wires under-
ground, and further restraining the defendant from interfering with
or taking possession of certain wires and poles, alleged to have been
purchased by complainant from the Tacoma Railway & Power Com-
pany.

In 1904 and 1905 identical franchises were granted by the city of
Tacoma—one to the Seattle-Tacoma Power Company, complainant's
grantor, and the other to the Tacoma Railway & Power Company, also
complainant's grantor of the poles and wires in question in this suit.
By these franchises the usual privileges in the streets and alleys were
granted for the installation and maintenance of poles and wires to trans-
mit electricity for the purpose of furnishing heat and power within the
city of Tacoma.

The ordinance granting the franchise to the Tacoma Railway & Pow-
er Company provided that the Tacoma Railway & Power Company
should not have any right, by virtue of said ordinance, to supply elec-
tric current to be used, directly or indirectly, for lighting purposes, ex-
cept current for lighting street cars, and—

"Section 2. That each and every right, privilege and authority and fran-
chise by this ordinance granted, shall without the passage of any resolution,
ordinance or any action of any kind whatsoever, on the part of the city of

Tacoma, be null and void and absolutely of no effect, upon the failure of said grantee, its successors or assigns, to perform any and all of the conditions in the ordinance specified and mentioned, for a period of thirty days after notice shall have been served upon **said grantee, its successors and assigns,** by the commissioner of public works of said city, under the directions and authority of the city council of said city to the effect that said city will, if said failure is not corrected before the expiration of thirty days from the serving of said notice, consider this franchise null and void and absolutely of no effect because of the failure of said grantee, its successors or assigns, to perform any and all of the conditions in this ordinance specified; and in the event of the forfeiture of the franchise hereby granted, on account of the breach of any of the conditions herein, the said grantee, its successors or assigns, shall also forfeit and surrender to the city of Tacoma all poles, lines, wires, or other property that may be located or constructed in pursuance hereof. within the city of Tacoma, unless the same are removed within sixty days thereafter and said streets, alleys and public places from which they are removed put in good condition, and the same shall thereupon become and be the property of said city of Tacoma."

It further provided that the stipulations in the ordinance should not prevent the city's granting the railway company, by special permit, the right to furnish electric current for lighting purposes, subject to the city charter and laws of the state, "such permit, however, to be revocable at any time at the option of the city."

In 1908, the Tacoma Railway & Power Company entered into a contract with the Northern Pacific to furnish the latter company electricity for power and lighting purposes at its depot and shops in the city of Tacoma. In April, 1913, the city, desiring to take over all the lighting business within its boundaries, by resolution revoked the permit which it had granted the Tacoma Railway & Power Company to furnish current for lighting purposes, in which resolution it is provided that, on and after April 15th of said year, it should cease furnishing current for such purposes.

On April 21st the council passed a resolution reciting that the Tacoma Railway & Power Company was continuing to supply such current for lighting purposes, and directing notice to be given such company that, in case of its failure to comply with the conditions of the ordinance, the city would claim a forfeiture of the franchise and the poles, wires, and other property, located or constructed in pursuance of the ordinance, unless the same should be removed within 60 days, specified in section 2.

The notice was served. The Tacoma Railway & Power Company declined to comply with the city's requirement, and in May of said year commenced an action in the superior court of the state, seeking to have the city enjoined from repealing the franchise ordinance and from asserting a forfeiture. The city answered, and by counterclaim prayed that the Tacoma Railway & Power Company be enjoined from furnishing power to be used, directly or indirectly, for lighting purposes, and that the franchise ordinance, and every right, privilege, and authority granted thereby, be forfeited and declared null and void.

A forfeiture of the franchise was adjudged and an injunction granted against the maintenance of lines for such purposes. It was further adjudged that the Tacoma Railway & Power Company be no longer entitled to exercise any privilege under it "except to remove its poles,

lines, wires, and other property from the streets of the city," and that, unless the Tacoma Railway & Power Company should, within 60 days after the entry of the decree, remove its poles, wires, and other property from the streets, alleys, and public places of the city, the same should be forfeited to, and be the property of the city of Tacoma.

At the time of the rendition of said decree the Tacoma Railway & Power Company gave notice of appeal, and the court thereupon ordered that, upon the giving of a supersedeas bond, proceedings under the judgment—

"shall be stayed, and that said judgment shall not become effective pending the said appeal to the Supreme Court. It is the intention of this order that the running of the 60-day period, allowed for the removal of the poles and wires from the streets, should be suspended during the pendency of the appeal."

The bond was given, and upon the appeal to the Supreme Court of the state the decree of forfeiture was affirmed on May 7, 1914. The petition for a rehearing was denied June 21, 1914, and the remittitur to the superior court, affirming said judgment, issued and was filed in the superior court on the 22d day of June, 1914.

On the 11th of that month, the Tacoma Railway & Power Company, it appears, sold and transferred all of its interest in the poles and wires in question, theretofore used in the distribution of electricity for power purposes under said franchise, to the complainant herein. Where poles supported wires, a portion of which were used for power and railway purposes, a half interest in such poles was transferred. Since such sale, the complainant has been supplying the former customers of the Tacoma Railway & Power Company with electric power, by use of the poles and wires so purchased.

On June 11, 1914, the city passed an ordinance requiring complainant to place all electric wires which it had constructed, or should construct after May 1, 1914, in underground conduits. Complainant and defendant each claim to own the poles and wires installed under the ordinance.

[1] It is asserted by complainant that the city threatens to forcibly disconnect the wires so purchased from the wires of complainant which transmit electricity to the wires so purchased, to destroy and remove such poles and forcibly disconnect the customers receiving electricity from complainant, and that complainant's damage, if such were permitted, would be in excess of $30,000.

The members of the city council each make affidavit, denying any threat or intent of proceeding with violence in taking possession of such poles and wires, and aver that it is not their intent to remove any of such poles and wires, except such as are unnecessary, but to take orderly and legal possession of them and use them in the prosecution of the city's business. Upon the hearing, assurance was given by the attorney for the city that the city intended only to secure from the state court a writ of assistance to carry into effect the judgment of forfeiture vesting the property in the city.

No contention is made that the city is threatening to interfere with any of complainant's property, in order to enforce the provisions of

the ordinance requiring it to put its wires underground.   Complainant seeks to have this underground ordinance declared void, as arbitrary and unreasonable—as not affecting it in the matter of the poles and wires purchased, because only becoming effective after such purchase. It is further attacked upon the ground that it was not passed in good faith as a police measure, but in order to interfere with the transfer of the poles and wires purchased by complainant from the Tacoma Railway & Power Company, and to aid the city, as a business competitor of the complainant, by such hindrance.

If immediate force was threatened in carrying this ordinance into effect, to the irreparable damage of complainant, a temporary injunction might be proper to preserve the status quo.   In the absence of such a showing, complainant is not entitled to this extraordinary relief.

This conclusion having been reached, it is not now necessary to consider the question of whether the ordinance was passed in good faith as a police regulation, or whether it is so arbitrary and unreasonable as to be void.   There is one phase in which it is proper to consider the ordinance as bearing, not upon any threatened action or asserted right upon defendant's part, but as bearing upon the title and rights in this property of complainant.

The underground ordinance requires all wires constructed by complainant after May 1, 1914, to be put underground.   The ordinance itself was not passed for six weeks after that day.   The complainant did not, strictly speaking, construct these wires.   It bought them, already installed, from the Tacoma Railway & Power Company.

It is contended that, as the Tacoma Railway & Power Company could, within 60 days after the decree of forfeiture becoming effective, have removed the poles and wires from the street, and, when removed, have sold them to the complainant, and the latter, under its franchise, could then have installed or constructed such wires in the streets as they now are, it is unreasonable to require the expenditure of thousands of dollars to accomplish this, when the same result is reached by its purchase from the Tacoma Railway & Power Company of the already installed wires; that such purchase is equivalent to construction.

[2] The question then remains whether the underground ordinance would not apply to such purchased wires as it did to wires actually constructed after May first.   No question is made but that the wires were constructed—when originally placed—in accordance with the then effective ordinance.   A reasonable construction of the ordinance is that it was only intended to apply to original construction and not to installed wires purchased, which had been constructed in accordance with the then existing ordinance.

[3] Complainant's franchise provides that the city should have the right at any time to require it to place all or any portion of its wires in underground conduits, except the main transmission lines, from where the same enter the corporate limits from the generating plants to the main distributing stations, but that it should not be required to place the poles and wires underground except upon the same street or alleys, or streets and alleys and to the same extent as the wires of

all other persons or corporations used to transmit electricity for power and heat are required to be placed underground.

It is contended by complainant that the city is a corporation; that it has not, and does not intend to, put its heat and power wires underground; that to require complainant so to do is contrary to the foregoing provision of its franchise.

In view of the conclusion reached, that the underground ordinance does not apply to the purchased poles and wires, it is not necessary to decide this question; but, in view of the earnestness with which it has been argued, it is deemed not improper to express the court's view.

Throughout the ordinance granting complainant's franchise the city is always spoken of as "the city" or the "city of Tacoma." This fact and the fact that, as ordinarily used and understood, the word "corporation" does not include cities, while they are, in fact, municipal corporations, render it clear that the words "persons or corporations" were not intended to include the city itself.

In Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353, by the franchise there in controversy the city agreed "not to grant to any other person or corporation any contract or privilege to furnish water to the city of Knoxville * * * for the full period of 30 years." It was held that the city was not, in the absence of special stipulations to that effect, precluded from establishing its own system of waterworks. The Knoxville Case was followed by this court in Washington-Oregon Corporation v. Chehalis (D. C.) 202 Fed. 591. The reasoning in the Knoxville Case cannot be distinguished from that controlling in the present case.

[4] The remaining and main question in the case is whether complainant acquired title, by its purchase from the Tacoma Railway & Power Company, after decree of forfeiture. The decree of forfeiture was self-executing, both as to the forfeiture of the franchise and the poles and wires in the streets, used thereunder. No further process was ordered or in contemplation.

It is not necessary to speculate or consider whether the decree effected a transfer of the title to this property as of the date of its rendition, or, by relation, as of the date of the company's refusal to comply with its franchise, for, in either event, it was long prior to complainant's acquiring any interest in it. Complainant asserts no interest, other than that it claims to have acquired from the Tacoma Railway & Power Company, and does not contend that it was an innocent purchaser, or had no notice of the proceedings resulting in the decree of forfeiture.

Nothing appears in the action of the court and the order made by it in granting the supersedeas to show that more was intended than to secure the appellant in its statutory rights under a supersedeas—to stay affirmative action upon the decree, but not to deprive it of any other force or effect. This to the end that the appellant should not be penalized for exercising its right of appeal; that, if it eventually won, it would not be a barren victory, after the city had removed its property from the street; that, if it finally lost, it would still be al-

lowed the 60-day period for the removing of said property from the city streets.

It is true that the order of supersedeas provided that the "said judgment shall not become effective pending the said appeal to the Supreme Court." It is likewise true that the transfer of the poles and wires in question from the Tacoma Railway & Power Company to complainant was made during the pendency of said appeal.

Standing alone, this language in the order might be susceptible of a very broad meaning, and necessitate the determination of the question whether a court could suspend all of the effects of its final judgment; but the language is not to be considered by itself. It was part of an order made upon appellant's motion for a stay and supersedeas of the judgment and proceedings thereunder. The language used occurred in the following connection:

"All proceedings under said judgment shall be stayed and said judgment shall not become effective pending the said appeal to the Supreme Court. It is the intention of this order that the running of the 60-day period allowed for the removal of the poles and wires from the streets should be suspended during the pendency of this appeal."

That nothing more than the usual supersedeas was intended is clearly apparent. The intention to annihilate the judgment cannot be attributed to the court from the use of this language. The language is not that the judgment shall not become effective "for any purpose," and the context shows for what purpose it was not to be effective—that is, as a basis of process commanding, or the taking of any affirmative action in its enforcement.

Indisputably the decree was of some effect, else an appeal could not have been based upon it. Almost as clear is it that such affirmative action alone was intended to be stayed, and that otherwise the judgment was to be given full effect as of its rendition. Rem. & Bal. Code, § 1722; Fawcett v. Court, 15 Wash. 342, 46 Pac. 389, 55 Am. St. Rep. 894; State v. Stallcup, 15 Wash. 263, 41 Pac. 251; 2 Cyc. p. 908, note 53; State v. Court, 31 Wash. 481, 71 Pac. 1095; State v. Poindexter, 43 Wash. 147, 86 Pac. 176.

If there is any reason to modify the judgment of the state court and afford any escape from the forfeiture for which it provides, other than that decreed—the removal of the property—such modification can only be secured in the court decreeing it, or upon review in an appellate court, providing the state court had jurisdiction to pronounce the decree of forfeiture.

No question is made here but that the state court had such jurisdiction. No such question was raised in the state court. It was a court of general jurisdiction and the Tacoma Railway & Power Company, owning the franchise, poles, and wires, went into that court and asked a decree against forfeiture, the right to which the city was asserting. The city joined issue with that company and prayed a forfeiture, for which the decree was granted. As long as the poles and wires were not removed, they remained subject to the decree of forfeiture, and the only way to free them from it and render them subject to sale,

unaffected thereby, was to remove them from the streets, for which the decree itself made provision.

Complainant, in support of its contention that it would be unreasonable to require the removal of this property from the streets in order to enable the Tacoma Railway & Power Company to effectually transfer them to complainant, relies upon the case of Wood v. Seattle, 23 Wash. 116, 62 Pac. 135, 140 (52 L. R. A. 369), wherein it was said:

"We think counsel have attached undue importance to this provision of the proposed ordinance. Had it not been provided that the existing railways, on the surrender of the franchises under which they are being operated, shall be deemed new construction, to the extent that they shall be made to conform to the requirements of the proposed ordinance, this would have been the effect of the ordinance in any event. Without this provision, all the city could have required would have been a street railway constructed in accordance with the requirements of the ordinance. It reserved no right to dictate from whom the material used in the construction of the railway should be purchased, nor what particular material should be used in that construction. These matters were left to the discretion of the purchasers of the franchise. If, then, they purchased a railway track which complied with the terms of the ordinance, on what theory could the city have prohibited its use? Must the idle ceremony of tearing it up and relaying it be gone through with? It would seem not; and much less would it seem that the grant of a franchise accompanied by permission to do a particular thing, which the grantee may lawfully do without such permission, would change the nature of the grant."

The reasoning of the foregoing would be apposite, and complainant's position persuasive, if it were not for the fact that, by the decree itself, claimant was, in default of the removal of the poles and wires, not only deprived of all title thereto, but by such default complainant's title vested in the city. This beneficial interest to vest in the city upon such default, prevents title being acquired by complainant, other than in the manner expressly left open by the decree and contract, or ordinance upon which it was based. Exact compliance, under such circumstances, could not correctly be styled an "idle ceremony."

The foregoing propositions are so clearly apparent that there is no warrant for withholding a ruling thereon until the final hearing and further preserving the status quo.

The petition for a temporary injunction is denied.