[No. 28492.    *En Banc.*    January 28, 1943.]

OMICRON COMPANY, INC., *Appellant,* v. ANNA D. HANSEN, *Respondent.*[1]

[1]Reported in 133 P. (2d) 505.

*Patterson & Patterson,* for appellant.

*Clarence J. Coleman* and *Thomas G. McCrea,* for respondent.

GRADY, J.—This action was brought to compel specific performance of a provision in a lease for an appraisal of the leased premises. The court sustained a demurrer to the amended complaint, plaintiff refused to plead further, and judgment was entered dismissing the action, from which judgment this appeal has been taken.

On April 30, 1929, the respondent, Anna D. Hansen, a widow, leased to the Continental Investment Company, a corporation, an undivided one-half interest in certain real property located in Everett, Washington, for a stipulated monthly rental. The term of the lease was ninety-nine years. The lessee agreed to pay all taxes and assessments which might be levied upon the land during the term and to construct a building thereon within one year from the beginning of the term, the cost of which should not be less than thirty-five thousand dollars. The lease also provided that the leasehold might be mortgaged by the lessee, that it might be assigned, and contained the following option agreement:

"The lessee, its successors and assigns are granted the privilege of purchasing the leased premises at any time during the life of this lease, either upon a price agreed upon, or if no price can be agreed upon by the parties, then the reasonable value of the premises shall be determined by a board of arbitration, one member being chosen by each party, and the two thus chosen to select a third, the value as determined by such board of arbitrators shall be the price at which the property may be purchased. However, should the lessee, its successors or assigns desire to exercise this option, within one year from the date of commence-

ment of this lease the purchase price is Seventeen thousand, five hundred ($17,500.00) Dollars and they shall signify their intention so to do by written notice to that effect to the then owners of the property."

After its execution, the lease was assigned to the appellant, Omicron Company, Inc.

The substance of the complaint is that, after the lease was executed, a building was constructed on the leased premises in accordance with its provisions; that appellant had endeavored to reach an agreement with respondent with reference to the purchase of the leased property, but had been unable to do so, and, on May 27, 1940, sent respondent the following letter:

"This lease is now held by Omicron Company, Inc., a Washington corporation. That corporation desires pursuant to the above quoted provision of the lease to have determined the price at which the property may be purchased. Accordingly, they have designated Mr. Charles P. Burnett of Seattle, Washington as member of the board of arbiters provided for. Will you therefore please, pursuant to the provisions of said lease, designate one member of such board of arbiters, and advise us of his name and address and we will communicate the information to Mr. Burnett and the two can then proceed with their choice of a third arbitrator as provided in said lease."

It was further alleged that respondent had failed, neglected, and refused to designate an appraiser, as provided in the lease.

The complaint prayed that a show cause order issue requiring the respondent to show cause why she should not be restrained from attempting to forfeit the lease until she had complied with the demand for the appointment of an arbitrator; that the court enter a decree requiring her to forthwith appoint an appraiser; that the court enter a decree declaring that the rights of the appellant, as lessee, are not subject to

forfeiture until the respondent complied with the lease with reference to the appointment of an arbitrator, and for general relief.

Neither the order sustaining the demurrer nor the judgment of dismissal sets forth the grounds of decision, but it appears from the briefs of counsel that the court held that, under the above-quoted option agreement of the lease, it was the duty of appellant to elect to purchase the property before it became entitled to have the purchase price fixed either by agreement or appraisal; also, that, if the claim of appellant, that the purchase price must be determined before it would be required to take up the option to purchase, is tenable, then the option agreement could not be enforced because of lack of mutuality.

There are two questions discussed in the briefs: (1) Must the lessee exercise its option to purchase the property, by giving to the lessor a notice that it elects to purchase, before it can call upon the lessor to negotiate a price or select an appraiser so that the price may be determined by one of the methods set forth in the lease? (2) If the purchase price is to be determined before the option is exercised, is the option agreement unenforcible because of lack of mutuality? The conclusion we have reached makes a decision of the second question unnecessary.

The option agreement provides that, if the lessee desires to exercise the option within one year from the date of the lease, it shall signify its intention to do so by a written notice to the lessor, and the purchase price shall be seventeen thousand five hundred dollars. We think the other part of the option agreement means that, if, after the expiration of the year and after the building has been constructed, the lessee desires to purchase, it must likewise notify the lessor,

and then the purchase price shall be fixed either by agreement or appraisal. If this is not the meaning of the option agreement, a very unusual situation exists and one which we do not think the parties intended or contemplated. The lessee would be in a position, at any time during the remaining ninety-eight-year period and when it felt market values were to its advantage, to demand of the lessor that a price be fixed by agreement or by appraisal; and, if such price were not satisfactory to the lessee, it would be under no obligation to purchase. This might be done as often as the lessee might elect, with all of its attendant cost and expense, which might be considerable. We do not think this would be fair to the lessor.

By this option agreement, the parties intended that the lessee shall have the right to purchase the land so as to own the building when the lease expired. This was its primary purpose when made. Incidental to this would be the fixing of the price to be paid for the land; and an alternative method was provided. It would, therefore, seem clear that the logical sequence would be for the lessee to decide that it wanted to buy the property, notify the lessor, and then have the price to be paid fixed either by agreement or by appraisement. This would work no hardship upon the lessee.

We do not consider the option agreement so ambiguous as to make it necessary to resort to rules of construction in order to ascertain the intention of the parties. The order of performance of this agreement might have been set forth therein and this controversy avoided, but we think the intent of the parties has been expressed with sufficient clarity that the meaning of the agreement is plain.

The question of order of performance of an option agreement of this kind does not appear to have been

decided by this court. We have had referred to us but two cases dealing directly with the question of order of performance, and they hold contrary to each other. *Farmington Village Corp. v. Farmington Water Co.*, 93 Me. 192, 44 Atl. 609; and *Montgomery Gas-Light Co. v. City Council*, 87 Ala. 245, 6 So. 113, 4 L. R. A. 616.

In these cases, operators of public utilities held franchises, and it was provided in each that, at the expiration of the term of the franchise, the municipality would have the option to acquire the property and plant of the grantee at a price to be fixed by an appraisal. Construing the respective provisions of the franchise, the supreme court of Maine held that the parties intended that the appraisement must precede the exercise of the option to purchase, and the supreme court of Alabama held the parties intended that the option must be first exercised and the appraisement then made. The citator does not indicate that either of these cases has been cited in any case dealing with the question of order of performance. We think the reasoning of the case of *Montgomery Gas-Light Co. v. City Council* to be more sound and logical than that of *Farmington Village Corp. v. Farmington Water Co.*

The judgment is affirmed.

SIMPSON, C. J., MILLARD, BEALS, STEINERT, BLAKE, ROBINSON, and JEFFERS, JJ., concur.

MALLERY, J., dissents.