# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BRADLEY FELDMAN, | No. 85476-3-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DARREN WILLIAMS, | |
| Respondent. | |

BIRK, J. — Pursuant to the parties' put/call agreement, Darren Williams initiated arbitration to determine that Bradley Feldman must sell his shares in a company to Williams and to determine the price. An arbitrator entered a final award granting that relief, but Williams decided against purchasing Feldman's shares. Feldman filed a motion to confirm the arbitration award in superior court, asking for an order requiring Williams to pay Feldman for his shares. The superior court denied Feldman's motion and granted Williams's motion to confirm the award as originally worded. We affirm and award attorney fees and costs to Williams, because Feldman's new claim that Williams must purchase his shares cannot be resolved on a motion to confirm an arbitration award and the award is not ambiguous.

I

Feldman and Williams were founders, shareholders, and employees of Riot Insight, Inc. Feldman and Williams entered into a put/call agreement. It stated

that in the event of a termination resulting from the willful failure of Williams or Feldman to perform their responsibilities or the voluntary termination of either party prior to the third anniversary date of the agreement's execution, the non-terminating party will have a right to purchase all shares of stock held by the terminating party. It stated further that if neither Williams nor Feldman has experienced a termination in service of the corporation and any time after the 18 month anniversary date of the agreement are unable to reach an agreement with respect to any major decision affecting the corporation, Williams may exercise his call right and Feldman may exercise his put right. In that event, "Williams shall have the right to elect to purchase Feldman's Interest (the "Call") at the Agreement Price determined in accordance with Section 3."

The put/call agreement contains the following arbitration clause:

Binding Arbitraion [sic]. Except as otherwise provided, any controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by final and binding arbitration in accordance with the then prevailing rules of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The arbitration proceedings shall be held in Seattle, WA, before a single arbitrator.

(Boldface omitted.) The parties agreed at least for purposes of the issues before this court that the put/call agreement was executed in July 2018.

On August 24, 2021, Williams terminated Feldman's employment with the company, though the parties disagreed as to whether it was a wrongful termination. On November 4, 2021, Williams sent an e-mail to Feldman stating he would like to purchase Feldman's interest in Riot. Williams stated, "Per the Put-Call Agreement, you are eligible for 60% of your pro-rata share of the Agreement Price. Your

current percentage of stock in RIOT is 28.8% by my calculation. . . . [M]y offer is $250,000 and we will remove you from the [Small Business Administration] loan guarantee."

In an amended demand for arbitration signed and dated on July 18, 2022, Williams made claims for declaratory relief and breach of contract. Williams requested an award declaring he has the right to purchase all of Feldman's shares and an award ordering Feldman specifically perform his obligations under the put/call agreement by selling or transferring his shares of Riot to Williams.

On August 26, 2022, Feldman signed and dated his answer and affirmative defenses to Williams's demand. Feldman claimed among other things, "[a]ny right to purchase Feldman's shares, however, had expired by the passage of time and because Williams (wrongfully) terminated Feldman from employment. As such, Feldman is not obligated to sell his shares to Williams and the claims in the Amended Demand should be dismissed." However, Feldman asserted in the alternative that if he were required to sell, then he was entitled to the fair value of those shares, which he went on to claim was higher than Williams credited. At the arbitration, Williams asserted Feldman was required to relinquish his shares for $0, whereas Feldman asserted the appropriate value was from $616,000 to $1.8 million.

The parties attended a three day arbitration hearing. On February 14, 2023, the arbitrator entered a final award that states,

1. Mr. Williams has the right to purchase all of Mr. Feldman's shares of Riot Insights, Inc., stock for the Agreement Price of $300,000.

2. Mr. Feldman shall sell his shares of Riot Insights, Inc., stock to Mr. Williams for the Agreement Price of $300,000.

This granted the declaratory relief and specific performance in the terms Williams had requested. The award noted relief not awarded was denied.

In a letter to Williams dated May 12, 2023, Feldman stated that since receipt of the arbitration award, he had unsuccessfully sought to sell his shares in return for the sum fixed in the award. He asked Williams to consider the letter to be a formal tender of his shares "in return for $293,381.25, plus any applicable interest, in accordance with the award." This amount was based on the arbitrated price of $300,000 less outstanding arbitration costs.

On May 15, 2023, Feldman filed a motion to confirm the arbitration award and enter judgment in superior court. Feldman argued that Washington law required confirmation of the award, that the arbitrator followed the law, and that the court should order Williams to pay for Feldman's shares. Feldman sought entry of a money judgment in his favor for the price determined by the arbitrator less outstanding arbitration costs. Feldman requested alternative relief that the court modify the award to set a deadline for Williams to complete the purchase of his shares or request the arbitrator clarify the award.

The same day, Williams filed his own motion to confirm the arbitration award. Williams requested that the superior court only "enter an order confirming the Final Award." Feldman claimed Williams's proposed order "is an obvious delaying tactic that resolves little, leaving for a later motion the enforcement of the arbitration award."

4

The superior court entered Williams's proposed order confirming the arbitration award. In relevant part, the order states,

1. The final arbitration award is unambiguous. The award must be read in its entirety that demonstrates Mr. Williams has the right to purchase all of Mr. Feldman's shares at the designated [price] and Mr. Feldman must sell his shares at the designated price. The award does not compel that Mr. Williams shall or must buy Mr. Feldman's shares. . . . Notably, the relief requested here of a specific deadline was not included in Plaintiff-Respondent's pre-hearing memorandum – only a request in the alternative that claimant be required to purchase them for $1,800,000.00. . . . The award does not need clarification to the extent it appears parties did not contemplate or consider this issue in the arbitration.

2. The Plaintiff-Respondent has failed to demonstrate a factual basis to warrant modification of the arbitration award. The request to include a timeframe is not correcting the award as permitted by statute but is an alteration of the award.

The superior court denied Feldman's motion and ordered that "[a]ny further disputes as to the parties' rights under the 'Put/Call Agreement' at issue in the preceding arbitration may be resolved by the parties in arbitration." The court ordered that "[p]ursuant to RCW 7.04A.250, the prevailing party may apply for an award of fees." The superior court subsequently granted Williams's motion for an award of attorney fees and costs in the amount of $11,075.00.

Feldman appeals.

II

Feldman claims the superior court erred when it denied his motion to confirm the arbitration award and granted Williams's cross motion. We disagree.

In Washington, arbitration is controlled by the uniform arbitration act (UAA), chapter 7.04A RCW. AURC III, LLC v. Point Ruston Phase II, LLC, 3 Wn.3d 80,

85, 546 P.3d 385 (2024). After a party to the arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award, at which time the court shall issue such an order unless the award is modified, corrected, or vacated. RCW 7.04.220. Although a party may apply to the court to confirm an arbitration award, that is not the same as bringing an original action to obtain a monetary judgment. Price v. Farmers Ins. Co. of Wash., 133 Wn.2d 490, 497, 946 P.2d 388 (1997). If the court does not modify, vacate, or correct the award, the court exercises a mere ministerial duty to reduce the award to judgment. Id.; see RCW 7.04A.260(2) ("An agreement to arbitrate providing for arbitration in this state confers exclusive jurisdiction on the court to enter judgment on an award under this chapter.").

On a party's motion, a superior court shall modify or correct an arbitrator's award if "[t]he award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted." RCW 7.04A.240(1)(c). Superior courts may submit the claim to the arbitrator to modify or correct an award. RCW 7.04A.200(4). Judicial review of an arbitration award is limited to the face of the award, and the award will not be vacated or modified in the absence of an error of law on the face of the award. Davidson v. Hensen, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998). Accordingly, judicial review of an arbitration award does not include a review of the merits of the case and the evidence before the arbitrator will ordinarily not be considered by the court. Id. at 119. We review de novo a trial court's decision to confirm an arbitration award. Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1311 (9th Cir. 2004).

A

Feldman argues the arbitration award is imperfect as a matter of form not affecting the merits of the decision and it requires Williams to complete the purchase of his shares. We disagree.

The award states Williams is entitled to purchase Feldman's shares for $300,000 and Feldman must sell his shares to Williams for $300,000. Nowhere does the award state that Williams must purchase Feldman's shares. The use of the word "shall" in the award imposes an obligation on Feldman to sell his shares *to* Williams *for* $300,000. It does not address when Feldman must sell his shares.[1] Feldman claims the arbitrator was not required to address Williams's obligation to purchase Feldman's shares because Williams "had already asserted that he properly exercised his call option, tendering performance, and therefore was legally committed to purchase the shares." Citing Washington and out of state authorities, Feldman says Williams had an obligation to purchase that is "inherent" in the award.

Relying on Rogers Walla Walla, Inc. v. Ballard, 16 Wn. App. 81, 553 P.2d 1372 (1976), Feldman argues Williams is now required to buy his shares because Williams exercised his call option. In Ballard, a company employee entered into an agreement to purchase 100 shares of the company's treasury stock. Id. at 82.

---

[1] The arbitration act limits the court's role when confirming an arbitration award. In general, a party seeking specific performance in court may be required to show that they have performed or are ready and willing to perform. Bower v. Bagley, 9 Wash. 642, 648-49, 38 P. 164 (1894). But, with exceptions not relevant here, "[t]he fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under RCW 7.04A.220 or for vacating an award under RCW 7.04A.230." RCW 7.04A.210(3).

The agreement provided that if the employee left the company or desired to sell the shares, they must be sold only to the company, who agreed to purchase them at $100 per share. Id. at 82-83. After the employee resigned at the company's request for mishandling a deal, the company sought the return of the stock certificate and tendered the purchase price of $10,000, but the employee refused to return the certificate. Id. at 84. The company filed an action for specific performance, which the trial court granted following a bench trial. Id. The Ballard court affirmed, noting specific performance was a proper remedy where the corporate stock was of unknown and of not easily ascertainable value or is unobtainable in the open market, as was the case with the company's stock. Id. at 89-90.

In Omicron Co. v. Hansen, a landowner leased her land to a corporation for a term of 99 years with an option to buy. 16 Wn.2d 362, 363, 133 P.2d 505 (1943). The option agreement provided that if the parties did not agree on price, the reasonable value of the premises would be determined by a board of arbitration. Id. at 363-64. The board would be composed of three members, one appointed by each party and the third appointed by the two parties' appointees. Id. The lessee assigned its interest to Omicron, who filed a lawsuit against the landowner because she did not designate an appraiser after Omicron sought an agreement to purchase the property. Id. at 364. Omicron sought the determination of a purchase price before it would be required to exercise the option to purchase. Id. at 364-65. The superior court dismissed the lawsuit and the Omicron court affirmed. Id. at 365, 367. The Omicron court interpreted the agreement to mean

that if the lessee desired to purchase the land, it must notify the lessor and then the purchase price must be fixed either by agreement or appraisal.  Id. at 365.  Otherwise, the lessee could repeatedly seek market valuations of the property throughout the life of the lease without any obligation to purchase the property.  Id. at 366.  Feldman argues that Williams's asserted right to invoke his call option and put the parties to the trouble of the price determination under the put/call agreement, but then decline to complete the purchase, leads to the same folly that Omicron eschewed.

There may be substantive merit in Feldman's position, but Ballard and Omicron are distinguishable from this proceeding to confirm the arbitration award.  The court's role in reviewing the confirmation of an arbitration award is limited by statute.  The remaining cases Feldman cites to support his substantive arguments on Williams's alleged obligations are distinguishable in the same way because those cases were not subject to arbitration proceedings.[2]  See Wash. Co-op. Chick

_____

[2] Feldman relies on Riot's status as a Delaware corporation to argue that Delaware law is "persuasive" regarding the analysis of the put/call agreement.  The put/call agreement does not contain a choice of law clause.  Ordinarily, Washington looks to the law of the state of incorporation to determine controversies arising from the internal affairs of a corporation.  FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 175 Wn. App. 840, 864-65 & n.56, 309 P.3d 555 (2013), affirmed, 180 Wn.2d 954, 331 P.3d 29 (2014).  But a party who intends to raise an issue concerning the law of another state must set forth in the party's pleading facts which show that the other state's law may be applicable or must state in the party's pleading or serve other reasonable written notice that the law of another United States jurisdiction may be relied upon.  CR 9(k)(1).  "The purpose of CR 9(k) is 'to put one's opponent and the court on notice of the applicability of foreign law.' "  Mulcahy v. Farmers Ins. Co. of Wash., 152 Wn.2d 92, 98, 95 P.3d 313 (2004) (quoting Rodriguez v. Travelers Ins. Co., 54 Wn. App. 725, 728, 775 P.2d 973 (1989)).  And where the law of Washington and a foreign state do not conflict, we apply Washington law.  See Shanghai Com. Bank Ltd. v. Kung Da Chang, 189 Wn.2d 474, 481, 404 P.3d 62 (2017).  Feldman

Ass'n v. Jacobs, 42 Wn.2d 460, 461-62, 466, 256 P.2d 294 (1953) (affirming dismissal on a motion for judgment on the pleadings for action arising out of a conditional sale contract); Allis-Chalmers Mfg. Co. v. Hedlund Lumber & Mfg. Co., 164 Wash. 296, 297-98, 2 P.2d 708 (1931) (action brought to recover machinery after default in installment payments filed in court). While Feldman may have articulated persuasive arguments why Williams is legally bound by his election to purchase his shares after invoking the put/call option, the type of order under review does not allow us to grant the relief Feldman requests. Feldman asserts that after the arbitration award, Williams's performance came due and Williams did not render it. This is a new claim of breach, not resolved in the existing arbitration award.

Feldman provides no basis to modify or correct the award consistent with statute. Including a requirement that Williams must exercise his right to buy Feldman's shares, or that he do so "in a reasonable time," would affect the merits of the arbitrator's decision. Such a change is prohibited by RCW 7.04A.240(1)(c).

B

Feldman argues in the alternative that the award was ambiguous. We disagree.

An arbitration award is ambiguous on its face if it may be read in more than one reasonable way. See Snoqualmie Police Ass'n v. City of Snoqualmie, 165

has neither pleaded that law other than Washington law governs this action, nor that there is a conflict between such other law and Washington law. We therefore apply Washington law. This does not foreclose review of Delaware case law as persuasive authority.

Wn. App. 895, 897, 273 P.3d 983 (2012). "A provision is not ambiguous merely because the parties suggest opposing meanings." Stranberg v. Lasz, 115 Wn. App. 396, 402, 63 P.3d 809 (2003). When an arbitration award is ambiguous, the proper remedy is to remand the award to the arbitrator for clarification. Snoqualmie Police Ass'n, 165 Wn. App. at 905. Findings of fact entered on an order confirming an arbitration award are superfluous. See Thorgaard Plumbing & Heating Co. v. King County, 71 Wn.2d 126, 136, 426 P.2d 828 (1967).

The arbitration award is not ambiguous, because it can be read in only one reasonable way. As explained above, the award did not require Williams to exercise his right to buy Feldman's shares at any time. Feldman's interpretation essentially reads language into the award that does not exist and its inclusion would amount to more than a mere correction.

This does not mean that Williams did not or does not have the obligation to complete the purchase—he may well have for the reasons Feldman argues. But this question simply has not been litigated, was not before the superior court, and is not before us. In the superior court's order confirming the arbitration award, the court stated, "The award does not compel that Mr. Williams shall or must buy Mr. Feldman's shares." But this refers only to the fact the arbitration award factually does not do so, and is not a determination that Williams had no such obligation. At oral argument, Feldman claimed that whether Williams could revoke an assertion of the right to purchase Feldman's shares was not before the arbitrator, and Williams conceded that on a motion to confirm an arbitration award the

11

superior court could not reach the merits of whether he had an obligation to sell.[3] We agree, and conclude that the question of Williams's obligation to complete the transaction must be litigated in a subsequent arbitration proceeding.

III

Feldman challenges the superior court's order awarding attorney fees and costs and requests an award for attorney fees and costs on appeal pursuant to RAP 18.1. Williams also requests attorney fees on appeal.

"On application of a prevailing party to a contested judicial proceeding under RCW 7.04A.220, 7.04A.230, or 7.04A.240, the court may add to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award, attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made." RCW 7.04A.250(3). The superior court awarded attorney fees and costs to Williams as the prevailing party pursuant to this statute.

"We will award attorney fees to the prevailing party 'only on the basis of a private agreement, a statute, or a recognized ground of equity.' " Buck Mountain Owner's Ass'n v. Prestwich, 174 Wn. App. 702, 731, 308 P.3d 644 (2013) (quoting Equitable Life Leasing Corp. v. Cedarbrook, Inc., 52 Wn. App. 497, 506, 761 P.2d 77 (1988)). RCW 7.04A.250(3) provides such a basis. Mainline Rock & Ballast, Inc. v. Barnes, Inc., 8 Wn. App. 2d 594, 618, 439 P.3d 662 (2019).

---

[3] Wash. Court of Appeals oral argument, Feldman v. Williams, No. 85476-3-I (Jun. 5, 2024), at 09 min. 54 sec. to 11 min., 18 sec., & 20 min. 41 sec. to 20 min., 55 sec., https://tvw.org/video/division-1-court-of-appeals-2024061208/.

Williams is the substantially prevailing party on confirming the arbitration award, so we affirm the superior court's order granting attorney fees and costs and award reasonable attorney fees and costs to Williams on appeal, subject to his further compliance with RAP 18.1(d).

We need not reach any other issues.

Affirmed.

_Birk, J._

WE CONCUR:

_Feldman, J._      _Bremner, J_